UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| JEFFERY KNIGHT, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) No.: 20-cv-2086-JBM |
| | ) |
| JAMES TATE, et al., | ) |
| | ) |
| Defendants. | ) |

## MERIT REVIEW

Plaintiff, currently held at the Dixon Correctional Center and proceeding *pro se*, files an action under 42 U.S.C. § 1983, alleging retaliation, and violations of First Amendment Free Speech and Fourteenth Amendment Due Process, at the Danville Correctional Center ("Danville"). The case is before the Court for a merit review pursuant to 28 U.S.C. § 1915A. In reviewing the Complaint, the Court accepts the factual allegations as true, liberally construing them in Plaintiff's favor. *Turley v. Rednour,* 729 F.3d 645, 649-51 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States,* 721 F.3d 418, 422 (7th Cir. 2013)(citation and internal quotation marks omitted). While the pleading standard does not require "detailed factual allegations," it requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Wilson v. Ryker*, 451 Fed. Appx. 588, 589 (7th Cir. 2011) quoting *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).

Plaintiff had worked as an inmate law clerk at Danville for approximately 8 years when he allegedly underwent a disciplinary transfer to Dixon in retaliation for his threats to file a grievance against the Danville Adjustment Committee. On February 25, 2019, another inmate, Floyd May, went to the prison library to e-file a document to comply with a deadline. This was

1

apparently a Monday, when the prison library was closed. Inmate May saw Officer Mosier, not a party, in the library and asked to be allowed to e-file the document. Officer Mosier called Plaintiff, a law clerk, who offered to e-file the document for inmate May. This was something Plaintiff had done many times before with the knowledge and consent of his various supervisors. It appears that the machine used for e-filing was in a locked office inside the library. Officer Mosier unlocked the office door, giving Plaintiff access to e-file the documents. Plaintiff did so, and logged the event in the "E-file to Court" logbook. Officer Mosier stood by until the task was done and thereafter locked the office door.

Later that day, Litigation Coordinator Webb, learned that documents had been e-filed on a Monday, when the library was closed. The following day, February 26, 2019, Webb contacted the librarian who questioned Plaintiff. Plaintiff admitted that he had filed the documents on inmate May's behalf. Litigation Coordinator Webb indicated that this was a "problem" as inmates were not allowed to file legal documents on behalf of others. Officer Mosier came to the library later that day, telling Plaintiff and the librarian that he had been questioned about the incident. Officer Mosier allegedly denied allowing Plaintiff to e-file the documents, claiming that if he admitted to this he would "look stupid." Officer Mosier told the two that he would claim mistake, that he thought Plaintiff intended to place paper copies in a filing cabinet, not to e-file them. When Plaintiff protested, Mosier replied that investigators were not likely to believe him over a staff member.

On February 26, 2019, Plaintiff was handcuffed and taken to investigatory segregation. On February 27, 2019, he was interviewed by Defendant Internal Affairs Officers Campbell, Simmons and Stuck, as well as a John Doe. At that time. Plaintiff gave a statement indicating that in the seven or eight years he had been working in the library, he often e-filed documents on

2

behalf of others, and did so with the knowledge and consent of the 13 supervisors whom he had had over the years. Plaintiff indicated, further, that he had previously e-filed documents on Mondays when the law library was closed and at other times, when the library was closed for extended periods. Plaintiff indicated that all of these filings had been recorded in the "E-File to Court" logbook. Plaintiff also disclosed to the investigators that Officer Mosier had concocted the story that he mistakenly believed that Plaintiff intended only to file paper copies in a filing cabinet. He also disclosed that at least one supervisor had asked him not to reveal that he had been allowed to e-file documents for other inmates.

Defendant Campbell allegedly told Plaintiff that he was sorry but, they would have to make Plaintiff a scapegoat. On March 7, 2019, Plaintiff was issued a disciplinary report for Electronic Contraband. Plaintiff was told that he was facing a penalty of up to one year in segregation, one-year loss of good time credits and a one-year demotion to C-Grade status.

On March 14, 2019, the disciplinary ticket was heard before Adjustment Committee members, Defendants Tate and Ellison. Even though Plaintiff had asked that inmate May be called as a witness, he was not. In addition, Plaintiff's request that the E-File to Court logbook be reviewed was not granted. When asked whether he was guilty of the charge, Plaintiff claimed that he was "between a rock and a hard place." This was so, as he had admittedly e-filed on behalf of another but had been told that he had permission to do so. Plaintiff indicates, in fact, that it was a supervisor who had originally given him the code to the e-filing machine.

Defendant Tate allegedly told Plaintiff that he believed the others were lying and if Officer Mosier had only told the truth, the matter would not have escalated. On March 21, 2019, Plaintiff received the Adjustment Committee's Final Summary Report with a finding of guilt and recommendation of one month; demotion to C-Grade, dayroom restrictions, commissary

restrictions, audio/visual restrictions and a two-month library restriction. The Committee marked "Denied" next to the recommendation identified as "Disciplinary Transfer." On March 20, 2019, Defendant Warden Calloway approved the proposed recommendations.

On March 22, 2019, Plaintiff directed a letter to Defendant Tate complaining that the Final Summary Report indicated that Plaintiff had not requested witnesses when he had submitted a written request that inmate May be called. In addition, inmate May had told Plaintiff that he had never been contacted by Internal Affairs as part of the investigation. Plaintiff indicated that he wanted to give Defendant Tate an opportunity to correct the matter before filing a grievance. Plaintiff did not receive a reply, but, on March 27, 2019, received a revised Final Summary Report which now recommended a disciplinary transfer. This request was approved by Defendant Calloway.

Plaintiff subsequently asked Defendant Calloway whether he was undergoing a disciplinary transfer in retaliation for his threat to file a grievance. Defendant allegedly answered, "you got off easy on that ticket to begin with and should have left well enough alone." Plaintiff posed the same question to Defendant Tate and got essentially the same answer. On April 17, 2019, Plaintiff was transferred to Dixon. Plaintiff subsequently grieved the matter and, on April 25, 2019, the Administrative Review Board ("ARB"), expunged the guilty finding, determining the charge as unsubstantiated.

## ANALYSIS

Plaintiff asserts that Defendants Tate, Ellison and Calloway retaliated against him for his threat to grieve the failure to allow his evidence at the disciplinary hearing. Prisoners have a protected First Amendment right to file grievances and to speak about the conditions of their confinement and may not be retaliated against for the exercise of this protected activity. *Dobbey*

*v. IDOC,* 574 F.3d 443, 446 (7th Cir. 2009). However, while these protections apply to the filing of complaints and grievances, they do not apply to the mere threat of filing a complaint or grievance. *See Bridges v. Gilbert*, 557 F.3d 541, 555 (7th Cir. 2009) ("[it is] implausible that a threat to file a grievance would itself constitute a First Amendment-protected grievance.") *See also*, *Davenport v. Szczepanski*, No. 16-494, 2016 WL 3254525, at *3 (S.D. Ill. June 14, 2016), *aff'd,* 704 Fed. Appx. 602 (7th Cir. 2017) (dismissing retaliation claim at merit review as the threat to file a grievance is not protected activity). Here, Plaintiff clearly pleads that he was subjected to retaliation after he had threatened, but not yet filed, a related grievance. As a result, the retaliation claim is DISMISSED for failure to state a claim.

Plaintiff also asserts that Defendants Tate, Ellison and Calloway conspired together to violate his First Amendment rights to free speech. *See Caffey v. Maue*, 679 Fed.Appx. 487, 490 (7th Cir. 2017) (prisoners may not be penalized for engaging in protected speech). Protected speech, however, is that which involves issues of "'public concern' rather than a 'personal grievance' of the speaker." *Wilson v. Greetan*, 571 F. Supp. 2d 948, 957 (W.D. Wis. 2007). *See Brookins v. Kolb,* 990 F.2d 308, 313 (7th Cir.1993) (letter written by inmate was not protected speech because it related to personal matter, not public concern). Here, Plaintiff's threat to grieve the failure to call his witness and to review the e-filing log concerned a purely personal matter, not an issue of public concern so as to implicate First Amendment protections. Plaintiff's free speech claim is DISMISSED.

Plaintiff also asserts that Defendants Campbell, Stuck, Simmons and John Doe conspired to violate his due process rights at the Adjustment Committee hearing. Plaintiff reveals, however, that the guilty finding was ultimately expunged by the ARB. This expungement is fatal to his claim, as Plaintiff may not proceed on a due process claim where the underlying disciplinary

finding has been expunged. *See Sanchez v. Godinez,* No. 14-275, 2014 WL 1097435 at *2 (S.D. Ill. March 20, 2014). "As a result, [of expungement] Plaintiff ultimately received the process to which he was due, even though his victory came too late to have prevented him from serving the segregation time…Plaintiff now has no cognizable civil rights claim." *See also, Leslie v. Doyle*, 125 F.3d 1132, 1137 (7th Cir. 1997) (plaintiff received due process where the review board subsequently cleared him of wrongdoing); *Morissette v. Peters*, 45 F.3d 1119, 1122 (7th Cir. 1995) (no denial of due process if the error the inmate complains of is corrected in the administrative appeal process). This claim is DENIED as well.

Plaintiff also complains of events at Dixon where he was not allowed visits with his sister. These claims, however, are unrelated to the events at Danville and represent an attempted misjoinder. In addition, the Federal Court in the Northern District of Illinois is the proper venue for claims arising at Dixon, which is located in Lee County, Illinois. If Plaintiff wishes to pursue any claims from Dixon, he is to file in the Northern District. *See* 28 U.S.C. §1391.

**IT IS THEREFORE ORDERED:**

1) Plaintiff's complaint is dismissed for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915A. Any amendment to the Complaint would be futile as Plaintiff cannot plead colorable constitutional claims on these facts. This case is closed, and all pending matters are rendered MOOT. The clerk is directed to enter a judgment pursuant to Fed. R. Civ. P. 58.

2) If Plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this Court within 30 days of the entry of judgment. Fed. R. App. P. 4(a). A motion for leave to appeal in forma pauperis should set forth the issues Plaintiff plans to present on appeal. *See* Fed. R.

App. P. 24(a)(1)(C). If Plaintiff does choose to appeal, he will be liable for the $505 appellate filing fee regardless of the outcome of the appeal.

6/30/2020                          s/Joe Billy McDade
ENTERED                       JOE BILLY McDADE
                            UNITED STATES DISTRICT JUDGE